**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

JANICE MACK,

       Plaintiff,

v.                               CASE NO.  4:11cv229-RH/WCS

BOBBIN TRACE AUTOMOTIVE, LLC,

       Defendant.

_____/

## ORDER GRANTING PARTIAL SUMMARY JUDGMENT

      This case arises from the defendant automobile dealer's conditional sale of a used car to the plaintiff.  The dealer delivered the car to the plaintiff pending satisfaction of the condition: a third-party's agreement to finance the transaction on specific terms.  When third-party financing could not be arranged, the dealer demanded the car's return, as required by the contract's plain terms.  The plaintiff refused to return the car and instead filed this action.  The plaintiff asserts that the contract requires the dealer to itself provide financing—even though that is not what the contract says—and asserts that the dealer has violated federal and state consumer-protection statutes.  The dealer has counterclaimed for conversion and

for replevin of the car.  Each side has moved for summary judgment.  This order

denies the plaintiff's motion and grants the dealer's motion in part.

I

The plaintiff is Janice Mack.  The defendant is Bobbin Trace Automotive,

LLC, which does business as Legacy Toyota of Tallahassee.  Ms. Mack and

Legacy entered a conditional sales contract on February 27, 2009.  The terms of

the contract were set out in three documents executed on that date.

First, the "Buyer's Order" identified the car—a 2005 Avalon—and set out

the price, other charges, and down payment.  The Buyer's Order also said:

> If Purchaser is financing this transaction, it is conditioned upon
> approval of Purchaser's proposed retail installment sale contract as
> submitted to or through the Dealer.  If that proposed retail installment
> sale contract is not approved under the terms agreed to with the
> Dealer, Purchaser may cancel this Invoice and any down payment
> and/or trade-in Purchaser submitted will be returned to Purchaser,
> provided that any vehicle delivered by the Dealer pursuant to this
> Invoice is returned to the Dealer in the same condition as delivered to
> Purchaser, normal wear and tear excepted, within twenty-four hours
> of written oral notice to Purchaser of the credit denial.

Buyer's Order, ECF No. 12-4, at 2 ¶ 11.

Second, the "Retail Installment Sales Contract" set out specific financing

terms and included all disclosures required by the Truth in Lending Act.  The

document included two cancellation sections.  The first was brief and required Ms.

Mack's separate signature; the point was to ensure Ms. Mack's knowledge of the

second, more complete cancellation provision set out in the smaller print on the

back of the document.  The first section said:

> SELLER'S RIGHT TO CANCEL.  If Buyer and Co-buyer sign
> here, the provisions of the Seller's Right to Cancel section on the
> back, which gives the Seller the right to Cancel with 30 days, will
> apply.

Retail Installment Sales Contract, ECF No. 12-2, at 2 of 4.  The second

cancellation section said:

> Seller's Right to Cancel
>
> a.  Seller agrees to deliver the vehicle to you on the date this
> contract is signed by Seller and you.  You understand that it
> may take a few days for Seller to verify your credit, locate
> financing for you on the exact terms shown on the front of this
> contract, and assign this contract to a financial institution.  You
> agree that Seller has the number of days stated on the front of
> this contract to assign this contract.  You agree that if Seller is
> unable to assign this contract within this time period to any one
> of the financial institutions with whom Seller regularly does
> business under an assignment acceptable to Seller, Seller may
> cancel this contract.
>
> b.  If Seller elects to cancel per Paragraph a above, Seller will give
> you written notice (or in any other manner in which actual
> notice is given to you).  In that event, you may have the option
> of negotiating and signing a new contract with different
> financing terms (for example, a larger down payment, a higher
> annual percentage rate, a required cosigner, etc.) or you may
> pay with alternate funds arranged by you.
>
> c.  Upon receipt of such notice, you must immediately return the
> vehicle to Seller in the same condition as when sold, reasonable
> wear and tear excepted.  Seller must give you back all
> consideration Seller has received in accordance with the terms
> of the Retail Purchase Agreement or Buyers Order.

     d.  If you do not immediately return the vehicle, Seller may use any legal means to take it back (including repossession) and you will be liable for all expenses incurred by Seller in taking the vehicle from you, including reasonable attorney's fees.

     e.  While the vehicle is in your possession, all terms of this contract, including those relating to use of the vehicle and insurance for the vehicle, are in full force and you assume all risk of loss or damage to the vehicle.  You must pay all reasonable costs for repair of any damage done to the vehicle while the vehicle is in your possession.

     f.  The terms of this Seller's right to cancel survive Seller's cancellation of this contract.

ECF No. 12-2 at 4.  The provision was set off in a black box.

The third document comprising the parties' contract was a single page entitled "Pay-Off and Subject to Credit Approval Agreement."  ECF No. 12-3.  It said:

The retail/lease installment sales contract signed by the buyer (and co-buyer if applicable) and the seller is a statement of the terms of the sale of the above referenced vehicle "subject to credit approval."  Subject to credit approval means that Seller shall attempt to secure the agreement of a third party to accept assignment of the contract on the terms expressed therein.

The above mentioned vehicle is being delivered to the buyer (and co-buyer if applicable) subject to credit approval pending the assignment of the contract to a third party.  Seller will make a reasonable effort to secure such assignment.  Upon notice that such third party has not been found, the buyer (and co-buyer if applicable) agrees to return the said vehicle in the condition in which it was received within 24 hours to the Seller at 3705 West Tennessee Street, Tallahassee, Florida.  Seller shall immediately refund to buyer (and co-buyer if applicable) all monies paid to Seller and any trade-in in

connection with this purchase and the parties' obligations shall be
terminated.

*Id*.

Legacy learned of the proposed third-party lender's refusal to providing

financing on March 28, 2009, the 28th day after the parties entered the conditional

sale contract.  Legacy says it immediately gave Ms. Mack oral notice of

cancellation and demanded that she return the car.  Ms. Mack says that while she

does not know the date on which she received notice, she is sure it was more than

30 days after she entered the transaction.  In any event, she refused to return the

car.

Had third-party financing been approved—or had Legacy agreed to itself

provide the financing as Ms. Mack says Legacy should have done—Ms. Mack

would have been required to make monthly payments of $423.77 beginning on

April 13, 2009.  She did not make the April or May payments.  On June 1, 2009,

Legacy's attorney sent a letter to Ms. Mack demanding the car's return based on

the inability to obtain financing and the resulting cancellation of the contract.  The

letter also noted Ms. Mack's failure to make any payment beyond the initial $300

down payment.  From that point forward, Ms. Mack tendered monthly payments,

which Legacy returned.  Ms. Mack still did not tender the April and May payments

that she missed.

II

Ms. Mack filed this action against Legacy in a Florida state court.  She

asserted that the contract obligated Legacy to provide financing if it was unable to

arrange third-party financing.  Legacy counterclaimed, asserting a claim for

conversion of the car.

Ms. Mack sought and obtained leave to file her first amended complaint.

The first amended complaint retained the original claims based on Legacy's

purported obligation to itself provide financing and added claims under the federal

Equal Credit Opportunity Act, the Florida Motor Vehicle Retail Sales Finance Act,

and the Florida Consumer Collections Practices Act.  Legacy removed the action to

this court.  Legacy answered the first amended complaint and filed an amended

counterclaim that retained the conversion claim and added a claim for replevin of

the car.

The parties have filed cross-motions for summary judgment.

III

Ms. Mack says that under the contract documents, Legacy was obligated to

itself provide financing for the transaction if no third party agreed to do so.  But

there is not a word in the documents that says anything of the kind.  The

documents are clear, unequivocal, and mean what they say.  Legacy agreed to sell

Ms. Mack this car for this price and on these terms only if it could arrange third-

party financing.  When financing could not be arranged, Legacy had the right to cancel.  The documents said so in clear and unmistakable language.

That does not necessarily mean, though, that Legacy *properly exercised* the right to cancel.  The retail installment sales contract's first cancellation section gave Legacy "the right to cancel within 30 days."  Retail Installment Sales Contract, ECF No. 12-2, at 2 of 4.  The second cancellation section required Legacy to give Ms. Mack notice of cancellation either in writing "or in any other manner" that provided actual notice.  The section set no deadline for giving notice.

This order announces no ruling on whether notice of cancellation was required or given within 30 days.  The issue will be addressed at the pretrial conference and summary-judgment hearing on December 15, 2011.

IV

Ms. Mack's statutory claims all fail.  A growing line of decisions recognize this.  *See Hunter v, Bev Smith Ford, L.L.C.*, No. 07-80665, 2008 WL 1925265 (S.D. Fla. April 29, 2008), *aff'd*, 353 F. App'x 218 (11th Cir. 2009); *Chastain v. N.S.S. Acquisition Corp.*, No. 08-81260, 2009 WL 1971621 (S.D. Fla. July 8, 2009), *aff'd*, 378 F. App'x 983 (11th Cir. 2010).  No purpose would be served by going back through these issues here.

V

For these reasons,

IT IS ORDERED:

Legacy's summary-judgment motion, ECF No. 10, is GRANTED IN PART. Ms. Mack's summary-judgment motion, ECF No. 24, is DENIED.  All deadlines that have not passed are stayed pending further order.  A hearing on the remaining summary-judgment issues is set for December 15, 2011, at 1:00 p.m.  The parties should be prepared to address these issues:

(1) whether Legacy could cancel only by giving notice within 30 days;

(2) whether a jury could find based on this record that Legacy did not give notice within 30 days;

(3) if a jury found after trial that Legacy did not give notice within 30 days, whether the proper judgment would be

(a) for Legacy in the amount of past-due payments, with interest and any taxable costs and attorney's fees,

(b) for Legacy in the amount of past-due payments (with any appropriate interest) plus the amount of all future installments (discounted to present value), with any taxable costs and attorney's fees, or

(c) something else; and

(4) the appropriate remedy—or procedures that should be followed to determine

the appropriate remedy—if Legacy properly canceled the contract.


SO ORDERED on November 29, 2011.

s/Robert L. Hinkle
United States District Judge